Jeary K. SMITH, Plaintiff–Appellant,

v.

NAVISTAR INTERNATIONAL TRANS-PORTATION CORPORATION, Navistar Financial Corporation and J. Merle Jones & Sons, Incorporated, Defendants–Appellees.

No. 90–2717.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1991.

Decided March 20, 1992.

Rehearing and Rehearing En Banc Denied April 29, 1992.

Fred R. Harbecke (argued), Chicago, Ill. and David Bikoff, Indianapolis, Ind., for plaintiff-appellant.

Arthur L. Klein (argued), Sally Y. Mengo, and Hal R. Morris, Arnstein & Lehr; and Richard K. Wray, Nathanson & Wray, Chicago, Ill., for defendants-appellees.

Before COFFEY, MANION and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff-appellant Jeary Smith appeals the district court's grant of partial summary judgment in favor of the defendants after determining that Smith was not entitled to consequential or incidental damages resulting from a defective truck purchased from the defendants. Smith also appeals the district court's judgment in his favor for the purchase price of the truck. We affirm.

## I.

Plaintiff-appellant, Jeary Smith brought this action charging the Navistar International Transportation Corporation ("Navistar"), Navistar Financial Corporation ("Navistar Financial") and J. Merle Jones & Sons, Inc. ("Jones"), a truck dealer, located in Ottawa, Illinois, with breach of warranty on the purchase of a truck.[1] In 1984, Smith, an independent owner-operator of long distance trucks, decided to purchase a new truck, and Smith requested a list of sixteen options and/or components on the truck. After discussing the proposed purchase with several dealers, Smith decided to buy the Navistar semi-tractor truck Model 9370 as specified, from Jones (a Navistar authorized dealership), on November 7, 1984. Smith signed a Retail Order at the time of purchase which included the following warranty:

"International Harvester Company's [now Navistar] Promise to You. We promise to you, the first user purchaser, that we will replace or repair any part or parts of your new International motor vehicle which are defective in material or workmanship without charge for either

1. The truck that Smith purchased was financed by Navistar Financial.

parts or labor during the first year or 12,000 miles of operation, whichever occurs first.

\* \* \* \* \* \*

What You Must Do. We recommend that you bring the vehicle back to the dealership where you purchased it; however, if you are in transit or have moved, take it to the most convenient authorized International Truck Dealer.

\* \* \* \* \* \*

THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE FIRST USER PURCHASER, AND ALL OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES ON THE PART OF THE COMPANY OR THE SELLER."

(Capitalization in original).[2] At the time of purchase, Smith negotiated an installment purchase agreement with Navistar Financial, which provided for sixty monthly payments of $1,595.34. The contract also contained a provision reciting that Navistar Financial was not responsible for any warranties on the truck beyond those offered by Navistar.

Upon delivery of the truck Smith received an Owner's Limited Warranty booklet which in pertinent part read:

"International Harvester [now Navistar] will repair or replace any part of this vehicle which proves defective in material and/or workmanship in normal use and service, with new or ReNewed parts, for the first twelve months from new vehicle delivery date or for 50,000 miles (90,000 Km), whichever occurs first, except as specified under 'What is Not Covered.'"

On the second page of the Owner's Limited Warranty booklet are additional warranty disclaimers:

"NOTE: DISCLAIMER!

THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED. THE COMPANY SPECIFICALLY DISCLAIMS WARRANTIES OF **MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE**, ALL OTHER REPRESENTATIONS TO THE FIRST USER/PURCHASER, AND ALL OTHER OBLIGATIONS OR LIABILITIES. THE COMPANY FURTHER EXCLUDES LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES, ON THE PART OF THE COMPANY OR THE SELLER. No person is authorized to give any other warranties or to assume any liabilities on the Company's behalf unless made or assumed in writing by the seller." (emphasis in original).

These disclaimers are similar to those disclaimers set forth in the Retail Order that Smith signed when executing the bill of sale.

Some nine days after Smith's purchase of the truck, he experienced problems with the truck's braking system. On no fewer than ten separate occasions between November 7, 1984 and April 1985, Smith brought the truck to authorized Navistar dealers for repairs. Thus, the truck was out of service for a period of forty-five days.[3] Smith alleges that throughout the period of repair, the defendants were aware that he had a contract with one firm that he relied upon for his business and that if he was unable to operate his truck he would lose the contract. Notwithstanding Smith's dissatisfaction with the number and frequency of the alleged defects, Smith

---

**2.** Smith later purchased an extended warranty for the Cummins engine in the Navistar truck. Smith's purchase of additional warranty protection implies that he had read and understood the terms of the Retail Order warranty.

**3.** Neither Navistar nor any of its dealers ever refused to work on Smith's truck, and Smith was never charged for any of the repairs undertaken.

continued to use the truck during the problem time period and eventually ran up some 48,488 miles on it. On June 6, 1985, Smith sent a letter to the three named defendants expressing his intention to revoke his contract based upon his dissatisfaction with the final repair effort. At this same time Smith ceased making installment payments on the truck.

Almost two years later, on May 4, 1987, Smith brought suit against the defendants Navistar and Jones for their alleged breach of express and implied warranties, and breach of contract in the truck purchase and also against the defendant Navistar Financial. Navistar Financial in turn filed a counterclaim seeking to hold Smith liable on the financing contract.[4] After extensive discovery, the defendants moved for summary judgment, and on January 27, 1989, the district court denied defendants' motion for summary judgment on the issue of liability, but granted defendants' motion as to damages in an opinion reported at 714 F.Supp. 303 (N.D.Ill.1989). The practical effect of this order was to limit the amount of damages a jury could award to $19,527.70, the amount Smith had paid for the truck prior to the revocation of his acceptance. After repeated attempts by the defendants to pay Smith the full amount of damages Smith was entitled to under the district court ruling, the defendants presented a motion, pursuant to Rule 1 of the Federal Rules of Civil Procedure, offering to have judgment entered against them in the amount of $19,527.70. Over the plaintiff's objection, the court granted the defendants' motion for judgment and entered a judgment against the defendants on February 28, 1989. Some nine days after entry of judgment in favor of the plaintiff, the plaintiff moved the court to reconsider the summary judgment of January 27, 1989. The district court denied the plaintiff's motion for reconsideration in an opinion reported at 744 F.Supp. 832 (N.D.Ill. 1990). Smith appeals.

## II. ISSUES FOR REVIEW

The plaintiff-appellant Smith raises the following issues on appeal: (1) Whether the district court erred in deciding that Smith was not entitled to consequential damages he allegedly sustained as a result of the failure of the limited warranty of repair or replacement; and (2) Whether the district court erred in entering judgment for the plaintiff in the amount which Smith paid for the truck upon the motion of the defendants pursuant to Rule 1 of the Federal Rules of Civil Procedure.

## III. DISCUSSION

### A. Consequential Damages

Illinois law applies in this diversity action, and the transaction is governed under Article 2 of the Uniform Commercial Code.[5] The plaintiff Smith argues that, because this is a diversity action, the district court was required to determine the applicable law of the State of Illinois when determining whether the plaintiff was entitled to consequential damages. The plaintiff contends that because, "the Illinois Supreme Court has not addressed the issue in question, the district court was required to use the predictive approach [and i]n applying this approach, the district court disregarded the sole Illinois appellate decision on point and chose a resolution having no basis in Illinois law."

■ Our review of the district court's grant of partial summary judgment in favor of the defendants is *de novo*: "[W]e must decide whether the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Dribeck Importers v. G. Heileman Brewing Co.*, 883 F.2d 569, 573 (7th Cir.1989) (citations omitted). In its denial of partial summary judgment, the district court cited two conflicting cases which dealt with the issue of whether consequential damages could be awarded when a limited warranty failed to

---

4. After the district court entered judgment in favor of Smith, Navistar Financial dropped its counterclaim.

5. The Code became effective in Illinois on July 1, 1962. *See Cates v. Morgan Portable Building Corporation*, 591 F.2d 17, 20 (7th Cir.1979).

provide the protection the buyer expected. The first of these cases was a decision of an intermediate appellate court, *Adams v. J.I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1 (4th Dist.1970). The second was a decision of this court, *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir.1988). Smith in essence argues that the district court erred in granting partial summary judgment because it chose to follow *AES* rather than *Adams*. However, federal courts are not bound by the decision of a lower state court unless the state's highest court in the jurisdiction whose law governs the diversity action has ruled on the matter. *White v. United States*, 680 F.2d 1156, 1161 (7th Cir.1982); *D'Acquisto v. Washington*, 640 F.Supp. 594, 619 (N.D.Ill.1986).

Smith's signature on the Retail Order would ordinarily constitute an effective waiver of any right to recover incidental and consequential damages arising from the loss of his single employment contract.[6] However, the U.C.C. provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." Ill.Rev.Stat. ch. 26, § 2–719(2). In *Adams*, the Illinois Appellate Court adopted a categorical approach and held that the seller's breach of a limited warranty to repair or replace defective tractor parts automatically exposes the seller to liability for the buyer's consequential damages despite an otherwise enforceable disclaimer:

> "The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroyed its benefits.... It should be obvious that they cannot at once repudiate their obligation under the warranty and assert its provisions beneficial to them."

*Adams*, 261 N.E.2d at 7–8.

However, in *AES*, this court rejected the categorical approach enunciated in *Adams*,

and refused to automatically sever a consequential damage disclaimer from a contract merely on the failure of a limited warranty to provide the benefits that the parties bargained for:

> "[S]ome courts have awarded consequential damages, when a remedy failed of its essential purpose, in the face of prohibitions in the contract against consequential damages. *See e.g., Soo Line Railroad Company v. Fruehauf Corporation*, 547 F.2d 1365 (8th Cir.1977); *Koehring Company v. A.P.I., Incorporated*, 369 F.Supp. 882 (E.D.Mich.1974); *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F.Supp. 39 (N.D.Ill.1970); *Adams v. J.I. Case Company*, 125 Ill. App.2d 388, 261 N.E.2d 1 (1970). However, we reject the contention that failure of the essential purpose of the limited remedy automatically means that a damage award will include consequential damages. An analysis to determine whether consequential damages are warranted must carefully examine the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract. The purpose of the courts in contractual disputes is not to re-write contracts by ignoring parties' intent; rather, it is to *interpret the existing contract as fairly as possible when all events did not occur as planned.*"

*AES*, 583 F.2d at 941 (footnote omitted) (emphasis added).

Other courts have similarly adopted this case-by-case approach. In *Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir.1980), the court held that the failure of the essential purpose of a limited remedy does not automatically mean that a damage award will include consequential damages:

> "New Jersey has not taken a position on this question, so in this diversity case we must predict which view the New Jersey Supreme Court would adopt if the question were presented to it.

---

**6.** As noted *supra*, the Retail Order, as well as the owner's manual that Smith received, disclaimed any warranties of merchantability and fitness for a particular purpose and any liability for incidental and consequential damages.

It appears to us that the better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable. This poses no logical difficulties. A contract may well contain no limitation on breach of warranty damages but specifically exclude consequential damages. Conversely, it is quite conceivable that some limitation might be placed on a breach of warranty award, but consequential damages would expressly be permitted.

The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The Code, moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive."

*Id.* at 1086 (footnotes and citations omitted).

Similarly, in *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir. 1978) (California law), the court determined that consequential damages were not warranted even though the limited repair warranty failed to achieve its essential purpose:

"The issue remains whether the failure of the limited repair remedy to serve its purpose requires permitting the recovery of consequential damages.... We hold it does not. In reaching this conclusion we are influenced heavily by the characteristics of the contract between [seller] and [buyer].... Parties of relatively equal bargaining power negotiated an allocation of their risks of loss. Consequential damages were assigned to the buyer, Wilson. The machine was a complex piece of equipment designed for the buyer's purposes. The seller Smith did not ignore his obligation to repair; he simply was unable to perform it. This is not enough to require that the seller absorb losses the buyer plainly agreed to bear. Risk shifting is socially expensive and should not be undertaken in the absence of a good reason. An even better reason is required when to so shift is contrary to a contract freely negotiated. The default of the seller is not so total and fundamental as to require that its consequential damages limitation be expunged from the contract."

*Id.* at 1375.

We believe the district court's reliance on *AES* rather than *Adams* was correct. The case-by-case approach adopted by *AES* and the other decisions allows some measure of certainty in that parties of relatively equal bargaining power can allocate all of the risks that may accompany a breach of warranty, and prevents the court from upsetting that allocation upon a breach of contractual duties. Moreover, in those situations where the limited warranty fails to provide the benefits that the buyer expected (i.e., to repair or replace defective parts) and the parties are clearly on unequal terms with respect to relative bargaining power, the case-by-case approach enunciated in *AES* enables the courts to examine "[t]he intent of the parties, as gleaned from the express provisions of the contract and the factual background" to determine whether consequential damages are warranted, rather than automatically exposing the seller to liability for consequential damages despite an otherwise valid disclaimer. *AES*, 583 F.2d at 941. Thus, we agree with the district court that the rationale underlying *AES* and the other decisions adopting the case-by-case approach is more compelling than the categorical approach enunciated in *Adams*.

Smith also argues that "[e]ven if the district court was correct in the approach that it chose, the case-by-case approach, it misapplied that approach." Smith contends that the district court failed to analyze "all of the attendant objective facts and circumstances, including the language of the agreement, the relative bargaining power of the parties and the com-

mercial context of the transaction" in order to determine which party should bear the risk of consequential damages. In our opinion, this argument is without merit as the district court noted that Smith failed to present any evidence in opposition to the damages awarded in the summary judgment motion. Moreover, our review of the record reveals that at the time Smith purchased the truck he was an experienced operator of long-distance trucks and had visited at least six different truck dealers in Indiana and Illinois, and had drawn up a list of sixteen specifications for the truck that he felt met his specific need. Having refused to accept any truck that did not meet his list of sixteen requirements, Smith presented the necessary components and options to defendant Jones, who offered the plaintiff-appellant the Navistar truck that met his specifications. At the time of purchase, Smith signed a Retail Order specifically excluding liability on the part of the seller for incidental and consequential damages:

> "THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, ALL OTHER REPRESENTATIONS TO THE FIRST USER PURCHASER, AND ALL OTHER OBLIGATIONS OR LIABILITIES, INCLUDING LIABILITY FOR INCIDENTAL AND CONSEQUENTIAL DAMAGES ON THE PART OF THE COMPANY OR THE SELLER."

Moreover, Smith accepted a warranty which also clearly excluded seller liability for incidental and consequential damages in a section set off with the words, **"NOTE: DISCLAIMER!".** Smith read the terms and conditions of the warranty and failed to ask any questions regarding the terms of the Retail Order or warranty before signing the same. We have failed to discover evidence in the record that the parties intended that the defendants bear the risk of consequential damages or that the parties' relative bargaining power was so unequal that the disclaimer was uncon-

scionable and we refuse to re-write the contract including the Retail Order's clear exclusion of consequential damages.

## B. Rule 1

■ Smith also contends that Federal Rule of Civil Procedure 1 fails to provide authority for the district court's judgment against defendant Navistar in the amount of $19,527.70 (the amount that Smith had paid for the truck prior to the revocation of his acceptance) because, "[t]he District Court neither determined liability nor damages." Rule 1 states:

> "These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. *They shall be construed to secure the just, speedy, and inexpensive determination of every action."* (emphasis added).

Following the district court's partial summary judgment on the issue of consequential damages, Smith's relief was limited to the payments he made on the purchase price of the truck. Once this figure was determined, the defendants moved for entry of judgment against themselves for the maximum amount Smith could recover following a verdict in his favor and the district court granted the defendants' motion for entry of judgment over the plaintiff's objections.

■ But we believe the district court's decision to grant the defendants' Rule 1 motion to have judgment entered against them in the total amount that a jury could award Smith was a "just, speedy and inexpensive" resolution of the case. Even though Smith's damages had effectively been capped, Smith remained desirous of a trial. The district court's grant of defendants' motion for judgment in favor of Smith not only promoted judicial efficiency, it also served to protect Smith's interest because he received the maximum amount he could recover after a trial. In fact, Smith quite possibly recovered more than he was entitled to, given the fact that the defendant Navistar would have had the

opportunity at trial to present evidence of Smith's extensive use of the truck (48,488 miles) to offset any relief Smith received.

 The parties are unable to cite any case law nor has our research revealed any discussion of the use of Rule 1 in this type of situation. Smith further argues that by entering the Rule 1 motion against defendants, the district court was precluded from consideration of whether Smith was entitled to pre-judgment interest. A decision regarding pre-judgment interest is within the discretion of the trial court and will not be disturbed on appeal unless there has been an abuse of that discretion. *Ross–Berger Companies, Inc. v. Equitable Life Insurance Society*, 872 F.2d 1331, 1339 (7th Cir.1989). "In Illinois, the general rule is that pre-judgment interest cannot be awarded unless provided by statute or agreement of the parties." *U.C. Castings Co. v. Knight*, 754 F.2d 1363, 1376 (7th Cir.1985) (quoting *In re Air Crash Disaster, etc.*, 644 F.2d 633, 638 (7th Cir.1981)). "Moreover, even if authorized by statute, interest can only be awarded *if the damages amount is fixed or easily computable.*" *Id.* at 1376 (emphasis added). We agree with the district court that these conditions could not be met in the case before us because damages did not become fixed until the defendant Navistar moved to have judgment entered against it for the total amount which a jury could award. Smith admits as much in his Reply Brief: "Prior to the [settlement conference of August 8, 1988] Plaintiff–Appellant's demand was approximately $110,000.00, and the Defendants–Appellees' offer which was made days prior to the conference, was $35,-000.00. At the conference, Plaintiff–Appellant reduced his demand for settlement purposes to $70,000. Defendants–Appellees, however, refused to move from their offer." Moreover, Smith recounts that at the February 10, 1989 status hearing (following the January 27, 1989 grant of partial summary judgment in favor of the defendants), the parties were still unable to agree on damages for purposes of settling the case. Therefore, it was only when the defendants brought their motion to have judgment entered against them that the damages became ascertainable, and at the time when judgment was entered, on February 28, 1989, Smith was no longer entitled to pre-judgment interest. The district court's decision not to award pre-judgment interest to Smith was not an abuse of discretion.

## IV. CONCLUSION

The decision of the district court is AFFIRMED.