**LEFEBVRE INTERGRAPHICS, INC.,** an Illinois corporation, Plaintiff/Counter–Defendant,

v.

**SANDEN MACHINE LIMITED,** a Canadian corporation, Defendant/Counter–Claimant.

No. 96 C 2478.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 12, 1996.

Wallace Cyril Solberg, Gardner, Carton & Douglas, Chicago, IL, for Plaintiff/Counter–Defendant.

Susan Leah Mahoney, Winston & Strawn, Chicago, IL, Thomas J. Quigley, Winston & Strawn, New York City, for Defendant/Counter–Claimant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Sanden Machine Limited's motion to dismiss Counts III, IV, and V of plaintiff Lefebvre Intergraphics, Inc.'s, complaint and all portions of the complaint seeking consequential damages. For the reasons that follow, the court grants in part and denies in part the motion to dismiss.

### I. BACKGROUND

Plaintiff Lefebvre Intergraphics, Inc. ("Lefebvre"), an Illinois corporation with its principal place of business in Illinois, is a commercial printer. Defendant Sanden Machine Limited ("Sanden"), a Canadian corporation with its principal place of business in Ontario, Canada, manufactures and sells commercial printing presses. This case is before the court on the basis of diversity jurisdiction. See 28 U.S.C. § 1332.

In March 1995, Lefebvre bought a commercial printing press from Sanden under a written contract. Sanden delivered the press in August 1995. Unfortunately, the press

never properly functioned. Sanden repeatedly but unsuccessfully tried to fix the press between September 1995 and January 1996.

Dissatisfied with the press, Lefebvre filed this lawsuit against Sanden. Lefebvre alleges breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), fraudulent misrepresentation (Count IV), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V). Lefebvre also asks for rescission of the purchase contract (Count VI). In addition, in each of Counts I through V, Lefebvre asks for consequential damages.

Sanden has moved to dismiss Counts III, IV, and V in their entirety, as well as all portions of the complaint that ask for consequential damages.

## II.  *DISCUSSION*

### A.  *Standard for deciding a motion to dismiss*

■ When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cromley v. Board of Educ. of Lockport,* 699 F.Supp. 1283, 1285 (N.D.Ill. 1988). If, when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* FED.R.CIV.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). However, the court may dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B.  *Count III—Breach of implied warranty*

Sanden argues that Count III, alleging breach of an implied warranty, should be dismissed because the Uniform Commercial Code ("UCC"), which Illinois has adopted, expressly permits parties to a commercial transaction to agree to exclude all implied warranties, and the parties did so in the present case. Section 2–316(3)(a) of the UCC provides:

> [U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

810 ILCS 5/2–316(3)(a). In their purchase agreement, Lefebvre and Sanden agreed that the contract's warranty "is in lieu of all other warranties express or implied." (Compl. Ex. 2 App. A ¶ 12.) Sanden contends that this provision " 'makes plain that there is no implied warranty.' " (Def.'s Mem. of Law in Supp. of its Mot. to Dismiss at 6 (quoting 810 ILCS 5/2–316(3)(a)).)

Lefebvre counters that notwithstanding the contract's warranty provision, Lefebvre still has a claim based on the implied warranty of merchantability. Lefebvre contends that under section 2–316(2) of the UCC, the language of a warranty provision must explicitly mention "merchantability" to disclaim the implied warranty of merchantability.

Section 2–316(2) provides that "[s]ubject to subsection (3), to exclude the implied warranty of merchantability or any part of it[,] the language [of the warranty provision] must mention merchantability...." 810 ILCS 5/2–316(2). Section 2–316(3) provides that "[n]otwithstanding subsection (2), ... all implied warranties are excluded by ... language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2–316(3)(a).

■ The court agrees with Sanden that section 2–316 provides two ways in which contracting parties can waive the implied warranty of merchantability: expressly use the term "merchantability" in the waiver provision, or use language that "in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2–316(2) and (3).

In the purchase contract between Lefebvre and Sanden, paragraph 12 provides: "This warranty is in lieu of all other warranties express or implied." This language clearly communicates that all warranties, except the warranty explicitly set forth in the contract, are excluded. The language is not ambiguous or vague. Thus, paragraph 12 excludes all implied warranties, including the implied warranty of merchantability, by using "language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." 810 ILCS 5/2-316(3)(a).

The Illinois Supreme Court apparently has not addressed the issue of whether section 2-316(2) is limited in its application by section 2-316(3)(a). At least one lower Illinois court has disagreed with this court's reading of section 2-316 and held that "unless the word 'merchantability' appears in a written disclaimer, the implied warranty of merchantability survives the language of disclaimer," *Schultz v. Jackson,* 67 Ill.App.3d 889, 893, 24 Ill.Dec. 395, 398, 385 N.E.2d 162, 165 (3d Dist.1979), regardless of whether the disclaimer language otherwise "makes plain that there is no implied warranty." 810 ILCS 5/2-316(3)(a). However, another Illinois court has criticized this construction of section 2-316. *See J.D. Pavlak, Ltd. v. William Davies Co., Inc.,* 40 Ill.App.3d 1, 5, 351 N.E.2d 243, 247 (1st Dist.1976).

This court is not bound by the decision of lower Illinois courts where the Illinois Supreme Court has not ruled on the matter. *Smith v. Navistar Int'l Transp. Corp.,* 957 F.2d 1439, 1443 (7th Cir.1992) (citing *White v. United States,* 680 F.2d 1156, 1161 (7th Cir.1982); *D'Acquisto v. Washington,* 640 F.Supp. 594, 619 (N.D.Ill.1986)). In the absence of any guidance on the question from the Illinois Supreme Court or any federal court, the court declines to follow *Schultz* because it is inconsistent with the plain language of section 2-316(2) and (3)(a). The court finds that section 2-316(2) applies "subject to" section 2-316(3); that section 2-316(3)(a) applies "notwithstanding" section 2-316(2); and therefore that section 2-316(3)(a)

serves to limit the application of section 2-316(2).

Because the waiver provision in the purchase contract between Lefebvre and Sanden plainly excludes all express and implied warranties not explicitly set forth in the contract, the court finds that Lefebvre has no cause of action for breach of the implied warranty of merchantability. Accordingly, the court grants Sanden's motion to dismiss Count III.

### C. *Count IV—Fraudulent misrepresentation*

Sanden contends that Lefebvre has failed to state a claim for fraudulent misrepresentation because Lefebvre has not alleged all of the elements necessary to make out a claim for fraudulent misrepresentation.

To state a claim for fraudulent misrepresentation under Illinois law, a plaintiff must allege the following: (1) the representation was a statement of material fact, rather than a mere promise or opinion; (2) the statement was false; (3) the person making the statement knew or believed that the representation was false; (4) the person to whom the representation was made reasonably relied on the truth of the statement; (5) the statement was made for the purpose of causing the other party affirmatively to act; and (6) the reliance by the person to whom the statement was made led to his injury. *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 567-68 (7th Cir.1991).

In its complaint, Lefebvre alleges that Sanden personnel represented that the printing press "could produce the printing that [Lefebvre] required in a commercially acceptable manner," and "could produce commercially acceptable four color process work." (Compl. ¶¶ 8, 9, and 10.) Lefebvre also alleges that Sanden did not inform Lefebvre of previous problems with the same printing press model and a similar model. (*Id.* ¶¶ 34-38.) Lefebvre alleges that Sanden made these misrepresentations to induce Lefebvre to enter into the purchase contract and that Lefebvre relied on the misrepresentations and entered into the purchase contract. (*Id.* ¶¶ 40, 47.)

### 1. Whether Sanden made statements of material fact

■ Sanden contends first that the alleged misrepresentations were not statements of fact, but were merely promises or expressions of opinion. "To support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion." *People ex rel. Peters v. Murphy–Knight*, 248 Ill.App.3d 382, 387, 187 Ill.Dec. 868, 872, 618 N.E.2d 459, 463 (1st Dist.1993) (citing *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 57 Ill.Dec. 904, 429 N.E.2d 1267 (1st Dist.1981); *Equity Capital Corp. v. Kreider Transp. Serv., Inc.*, 967 F.2d 249 (7th Cir.1992)). A statement that "merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable representation." *West v. Western Cas. and Sur. Co.*, 846 F.2d 387, 393 (7th Cir.1988). *See also Murphy–Knight*, 248 Ill.App.3d at 387, 187 Ill.Dec. at 872, 618 N.E.2d at 463 ("[s]tatements regarding future events are considered opinions, not statements of fact").

■ That is, the misrepresentation "must be an affirmance of fact and not a mere promise or expression of opinion or intention; or in other words 'the fraud must be in the original contract or transaction, and not in its nonfulfillment.'" *Zaborowski v. Hoffman Rosner Corp.*, 43 Ill.App.3d 21, 23, 1 Ill.Dec. 465, 467, 356 N.E.2d 653, 655 (2d Dist.1976). In addition, statements that are "nothing more than a recommendation of one's product are not representations of fact, but rather [are] 'mere commendation or opinion' and are not actionable as fraud." *Murphy–Knight*, 248 Ill.App.3d at 388, 187 Ill. Dec. at 873, 618 N.E.2d at 464 (quoting *Spiegel v. Sharp Elec. Corp.*, 125 Ill.App.3d 897, 902, 81 Ill.Dec. 238, 242, 466 N.E.2d 1040, 1044 (1st Dist.1984)).

Sanden argues that its allegedly fraudulent representations regarding the ability of the printing press to meet Lefebvre's needs were not statements relating to past or present facts, but rather were statements about future or contingent events. *See West*, 846 F.2d at 393. It also argues that the allegedly fraudulent statements amounted to "mere commendation or opinion." *Spiegel*, 125 Ill. App.3d at 902, 81 Ill.Dec. at 242, 466 N.E.2d at 1044. Sanden asserts that its statements regarding the printing press's capabilities were analogous to the statements in *Spiegel* that a copier would make "picture perfect" copies. *Id.*

Lefebvre counters that Sanden's statements should be treated as statements of material fact. Lefebvre likens its situation to that of the plaintiffs in *Murphy–Knight*. In that case, defendants supplied thermal banks for the heating, ventilation, and air conditioning (HVAC) system in the State of Illinois Center. After the HVAC system failed to meet performance specifications, plaintiffs sued defendants for fraudulent misrepresentation, alleging that defendants had misrepresented that their equipment could meet the performance specifications. *Murphy–Knight*, 248 Ill.App.3d at 388, 187 Ill. Dec. at 873, 618 N.E.2d at 464. The allegedly fraudulent statements were that the thermal banks were "as called for in the specifications," and had a "capacity of '100,000 pounds of ice at 2½ inch thickness.'" *Murphy–Knight*, 248 Ill.App.3d at 388, 187 Ill. Dec. at 872, 618 N.E.2d at 464. The specifications required the thermal banks to produce "100,000 pounds of ice in 2½ [inch] thickness in 12 hours under certain conditions." *Id.*

Defendants argued that the statements were not actionable as fraud because the statements related to future events. The court disagreed. It stated that although the alleged representations related to the performance of the thermal banks upon their installation as part of the HVAC system, the court nevertheless was convinced that the representations should be treated as ones of present fact rather than future performance. *Id.* The court found that according to the allegations of the complaint, the representations "concerned a machine of known physical characteristics and its capabilities based upon the application of certain mathematical formulae and laws of physics to those physical properties." *Murphy–Knight*, 248 Ill. App.3d at 388–89, 187 Ill.Dec. at 873, 618 N.E.2d at 464. The court stated further that the representations concerned "the capabilities of a machine which was either in exis-

tence at the time the statements were made, or one of a known, specified, and certain type. As such, the statements at issue here must be considered representations of existing fact, and thus actionable as fraud." *Murphy–Knight*, 248 Ill.App.3d at 389, 187 Ill.Dec. at 873, 618 N.E.2d at 464.

The court found a dearth of Illinois case law regarding representations such as the ones in that case, so it relied on similar cases from other jurisdictions. *See id.* (citing *Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.*, 80 N.H. 236, 116 A. 34 (1921) ("Representations by an expert on power to one not having equal knowledge as to the amount of energy which standard makes of motors and engines will develop are not future promises, but are statements with reference to known facts based on tests and mathematical computations. Such representations differ materially from 'sellers' talk' or mere opinion expressed to one having equal knowledge or equal opportunities for knowledge"); *Bareham & McFarland, Inc. v. Kane*, 228 A.D. 396, 240 N.Y.S. 123 (A.D.1930) (representations that heater, when installed in home, would heat building to 70 degrees in zero-degree weather, that fuel would cost no more than $350 per season, and that gas for pilot light would not exceed $1 per month held to "relate to the inherent capacity, character and quality of the heater, and what it was actually capable of doing" and thus constitute "positive statements of existing facts"); *Traylor Engineering & Manufacturing Co. v. National Container Corp.*, 45 Del. 143, 70 A.2d 9 (1949) (representations that kiln would consume less than 65 gallons of oil per ton of lime produced and that kiln would easily produce 70 tons of high quality lime per day held to be actionable as fraud)).

The court in *Murphy–Knight* found that the representations at issue in that case were not dependent upon any future conduct of defendants. *Murphy–Knight*, 248 Ill.App.3d at 389, 187 Ill.Dec. at 874, 618 N.E.2d at 465. It also found that the representations differed from those made in *Spiegel* that a copier would produce "'picture perfect copies,'" which the *Spiegel* court held to be "'mere commendation or opinion;'" and in *LaScola* that a company has a "'lucrative

compensation plan,' that executives are 'straight shooters,' and that [the] company is 'ethical,'" which the *LaScola* court found to be "too general and difficult to substantiate to be considered statements of fact." *Id.*

The court noted that in both *Spiegel* and *LaScola*, the representations were subjective, difficult to prove, and could be considered "dealer talk" or "puffing." *Murphy–Knight*, 248 Ill.App.3d at 389–90, 187 Ill.Dec. at 874, 618 N.E.2d at 465. It noted that in the case before it, in contrast, the representations were specific and of an objective, quantifiable, and verifiable nature. *Murphy–Knight*, 248 Ill.App.3d at 390, 187 Ill.Dec. at 874, 618 N.E.2d at 465. It thus found that defendants made misrepresentations of material fact by stating that their thermal banks could meet the performance specifications.

However, the court noted that if the thermal banks had been designed specifically for the State of Illinois Center and were to be constructed in the future, any representations regarding their capabilities might be regarded as predictions or promises of future performance. *Id.* (citing *Consolidated Papers, Inc. v. Dorr–Oliver, Inc.*, 153 Wis.2d 589, 451 N.W.2d 456, 459 (1989) ("alleged representations that the clarifier yet to be designed and constructed would meet the 'specific operating requirements' of [plaintiff] ... were promises of future performance")). The issue would then "fall within the traditional rule that an action for fraud may not be based upon opinion or representations relating to future contingent events." *Id.*

■ This court finds that the facts of the present case fall somewhere on a continuum between *Murphy–Knight* and *Spiegel*. Lefebvre argues that the representations in this case concern a machine of "known physical characteristics and capabilities." *Murphy–Knight*, 248 Ill.App.3d at 389, 187 Ill.Dec. at 873, 618 N.E.2d at 464. However, in *Murphy–Knight*, the alleged misrepresentations were statements about specific, quantifiable, and verifiable capabilities of the thermal banks, not merely general statements about whether the thermal banks would perform as plaintiffs desired them to perform.

Had the alleged misrepresentations in the present case concerned, for example, the

number of copies per minute the printing press would produce, or something else of a quantifiable nature, this case would be more akin to *Murphy–Knight.* But the statements made by Sanden's employees were not of that nature; rather, they were somewhat subjective and might be considered "dealer talk." The alleged misrepresentations regarding whether the printing press would produce commercially acceptable work were substantially more vague and general than any of the misrepresentations in *Murphy–Knight.*

On the other hand, the statements in the present case were not as obviously "dealer talk" or "puffing" as in *Spiegel.* A statement that a copier can produce "picture perfect copies" unquestionably is subjective, an opinion, and mere commendation. But the statement that a printing press can produce commercially acceptable four color printing is less clearly puffing and ostensibly more objective than the statement in *Spiegel.*

The question, then, is to which end of the continuum the present case is closest. The court finds that Sanden's statements regarding the capabilities of its printing press were more like the statements in *Spiegel* and less like the statements in *Murphy–Knight,* and therefore that they were not statements of material fact. The statements in *Murphy–Knight* and the cases on which it relied all related to very specific, objective, and mathematically or numerically quantifiable and verifiable characteristics of machines already in existence or of known physical characteristics and capabilities. In the present case, the statements by Sanden concerned the future performance and non-quantifiable and rather subjective capabilities of a machine that apparently had a standard basic design but was not yet built, and was to be built at least in part to Lefebvre's specifications.

Thus, the court finds that Sanden's statements that the printing press could produce commercially acceptable four color process work were statements of opinion or promises about the future performance of a machine to be built for Lefebvre, contingent upon the machine being completed successfully; they were not statements about past or present facts.

Accordingly, Sanden's employees did not engage in fraudulent misrepresentation by stating that the printing press could produce commercially acceptable printing or commercially acceptable four color process work.

## 2. Whether Sanden had a duty to disclose previous problems with printing press

Sanden next argues that it had no duty to disclose any problems it had experienced in the past with another printing press sold to another customer, and therefore that Lefebvre has no claim for fraudulent misrepresentation based on its allegation that Sanden failed to disclose the problems.

In Illinois, failure to disclose material information may be considered a false statement of material fact, but only if the person failing to disclose the information "owed a duty to disclose that information to the party across the bargaining table." *Equity Capital Corp. v. Kreider Transp. Service, Inc.,* 967 F.2d 249, 253 (7th Cir.1992). *See also AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.,* 896 F.2d 1035, 1040 (7th Cir.1990) ("For an omission to rise to the level of fraud, ... there must be a duty to disclose"). Whether such a duty existed is a question of law. *Equity Capital,* 967 F.2d at 253.

A duty to disclose generally arises in two circumstances: (1) when the defendant owes the plaintiff some fiduciary duty to make full and fair disclosure and fails to correct a misapprehension of a material fact; or (2) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension. *Coca–Cola Co. Foods Div. v. Olmarc Packaging Co.,* 620 F.Supp. 966, 973 (N.D.Ill.1985) (citing *Manning v. Ashland Chemical Co.,* 498 F.Supp. 1382, 1383 (N.D.Ill.1980); *Tcherepnin v. Franz,* 393 F.Supp. 1197, 1217 (N.D.Ill.1975), *supplemented,* 424 F.Supp. 778 (N.D.Ill.1976), *aff'd,* 570 F.2d 187 (7th Cir.), *cert. denied sub nom. First Nat'l Bank and Trust Co. in Alton v. Berke,* 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978); *Obermaier v. Obermaier,* 128 Ill.App.3d 602,

606–07, 83 Ill.Dec. 627, 631, 470 N.E.2d 1047, 1051 (1st Dist.1984)). With respect to the second circumstance, Illinois courts have held that "[w]hile silence in a business transaction does not necessarily amount to fraud, silence accompanied by deceptive conduct or suppression of material facts results in active concealment," *Munjal v. Baird & Warner, Inc.*, 138 Ill.App.3d 172, 180, 92 Ill.Dec. 809, 816, 485 N.E.2d 855, 862 (2d Dist.1985), "and it then becomes the duty of the person to speak." *Russow v. Bobola*, 2 Ill.App.3d 837, 841, 277 N.E.2d 769, 771 (2d Dist.1972).

■ Thus, in the case of a claim of concealment of material information, the analysis of whether the defendant committed a fraudulent misrepresentation is modified, and

in order to prove the concealment amounted to a fraudulent misrepresentation[,] the plaintiff must prove: (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak ...; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Stewart v. Thrasher*, 242 Ill.App.3d 10, 16, 182 Ill.Dec. 930, 935, 610 N.E.2d 799, 804 (4th Dist.1993) (citing *Huls v. Clifton, Gunderson & Co.*, 179 Ill.App.3d 904, 909, 128 Ill.Dec. 858, 862, 535 N.E.2d 72, 76 (4th Dist.1989)).

Lefebvre has not alleged that Sanden owed it any type of fiduciary duty, so if Sanden had any duty to disclose the past failures, that duty would have to arise from Sanden's silence accompanied by deceptive conduct or suppression of material facts.

Lefebvre argues that Sanden not only made material misrepresentations about the capabilities of the printing press, but also actively concealed the material fact of the problems that made the printing press incapable of producing commercially acceptable printing. Lefebvre argues that Sanden was not simply silent about the printing press's defects, but engaged in active deception by reassuring Lefebvre that the printing press was capable of producing commercially acceptable four color process work when Sanden knew that it could not. Lefebvre argues that Sanden's suppression of material facts gave rise to active concealment, which then made it Sanden's duty to inform Lefebvre of the printing press's problems.

■ The flaw in Lefebvre's arguments is that the court has found that Sanden's statements that the printing press would produce commercially acceptable four color process work were not fraudulent, since they were simply expressions of opinion or promises about future performance of the not-yet-built printing press. Thus, Sanden did not engage in active deception with this "dealer talk."

■ Aside from the statements regarding the ability of the printing press to produce commercially acceptable four color work, Lefebvre has not alleged any other deceptive acts by Sanden that may have contributed to Lefebvre's misapprehension that the printing press had no defects or problems. Thus, all that Lefebvre's complaint alleges is that Sanden was silent about the past problems with another printing press that was sold to another customer, and silence in a business transaction is not enough to constitute fraud. *See Munjal*, 138 Ill. App.3d at 180, 92 Ill.Dec. at 816, 485 N.E.2d at 862.

Moreover, even if Lefebvre's complaint sufficiently alleged that Sanden actively concealed and therefore owed Lefebvre a duty to disclose the past problems with another printing press sold to another customer, Lefebvre's complaint still does not state a claim for fraudulent misrepresentation arising out of Sanden's failure to disclose material information.

One of the requisite elements of a claim of fraudulent concealment is that "the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the

silence as a representation that the fact did not exist." *Stewart*, 242 Ill.App.3d at 16, 182 Ill.Dec. at 935, 610 N.E.2d at 804. Lefebvre does not allege that it could not have learned about the past problems with another Sanden printing press sold to another customer by making a reasonable inquiry of Sanden or Sanden's customers. Lefebvre does not allege that it asked Sanden whether the type of printing press that Lefebvre was considering purchasing had experienced any problems in the past, or that it asked Sanden for names of other customers who had purchased the same or a similar type of printing press so that Lefebvre could contact those customers for references. In short, Lefebvre's complaint contains no allegations indicating that Lefebvre took any steps to make a reasonable inquiry about Sanden or its printing presses, or that Sanden prevented it from making such an inquiry.

Accordingly, Lefebvre has failed to state a claim for fraudulent misrepresentation based on Sanden's alleged concealment of past problems with another printing press sold to another customer.

### D. *Count V—Violation of the Illinois Consumer Fraud Act*

Sanden next contends that Lefebvre fails to state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1—505/12, because it has failed to allege the necessary nexus between Sanden's allegedly deceptive practices and the concerns implicated by the Consumer Fraud Act. Sanden asserts that the test for standing in a consumer fraud action between two businesses is whether the seller's conduct implicates consumer protection concerns or is addressed to the market generally, and that Lefebvre has not alleged either of these requisites.

Lefebvre counters that the Consumer Fraud Act was amended in 1990 to eliminate the requirement that the plaintiff allege and show an effect on consumers generally, and therefore that Lefebvre need not allege that Sanden's practices affected consumers or the market generally. Lefebvre also argues that Sanden ignores the fact that Lefebvre is a consumer of Sanden's products, and that the

tests cited by Sanden apply only where businesses are not consumers of each other's products.

■ Lefebvre is correct that the 1990 amendment to the Consumer Fraud Act dispensed with any requirement previously imposed by the courts that a plaintiff prove a public injury, a pattern, or an effect on consumers generally to maintain an action under the Consumer Fraud Act. *See Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 458–59, 211 Ill.Dec. 299, 305, 654 N.E.2d 1109, 1115 (2d Dist.1995) (citing 815 ILCS 505/10A). Thus, Sanden's reliance on *Neumann v. John Hancock Mut. Life Ins. Co.*, 736 F.Supp. 182 (N.D.Ill.1990), is misplaced, because that case pre-dates the 1990 amendment to the Consumer Fraud Act and is inconsistent with the amendment and subsequent cases discussing the amendment.

■ Illinois' Consumer Fraud Act "is primarily concerned with protecting consumers." *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F.Supp. 316, 323 (N.D.Ill.1995). Nonetheless, businesses may have standing to bring actions under the Consumer Fraud Act. *Id.* (citing 815 ILCS 505/1(c); *Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F.Supp. 1486, 1493 (N.D.Ill.1987)). The proper test to determine whether a business has standing to bring a Consumer Fraud Act action against another business depends upon whether the business is a consumer of the other business's product and the nature of the case.

"Where a dispute involves two businesses that are not consumers, the proper test is 'whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'" *Lake County Grading*, 275 Ill. App.3d at 458, 211 Ill.Dec. 299, 654 N.E.2d at 1115 (quoting *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App.3d 524, 534, 137 Ill.Dec. 409, 417, 546 N.E.2d 33, 41 (2d Dist.1989)). By its very terms, this test applies only to a Consumer Fraud Act action by a business that is not a consumer of the other business's products.

However, the two federal district court cases relied upon most heavily by Sanden fail to note this important limitation, and state simply that " 'the test for standing is whether "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." ' " *Web Communications,* 889 F.Supp. at 323 (quoting *Gadson v. Newman,* 807 F.Supp. 1412, 1421 (C.D.Ill.1992) (quoting *Downers Grove,* 190 Ill.App.3d at 534, 137 Ill.Dec. at 417, 546 N.E.2d at 41)); *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.,* 902 F.Supp. 805, 812 (N.D.Ill.1995) (quoting *Gadson,* 807 F.Supp. at 1421 (quoting *Downers Grove,* 190 Ill. App.3d at 534, 137 Ill.Dec. at 417, 546 N.E.2d at 41; *Zinser v. Rose,* 245 Ill.App.3d 881, 886, 245 Ill.App.3d 881, 185 Ill.Dec. 574, 578, 614 N.E.2d 1259, 1263 (3d Dist.1993))). *Compare CTS Corp. v. Raytheon Co.,* No. 92 C 3878, 1993 WL 157464, *2–4 (N.D.Ill. May 12, 1993) (recognizing that the test applies only to non-consumer businesses).

Despite not expressly noting the limitation that the test applies only to non-consumer businesses, *Web Communications* and *Industrial Specialty* both involved businesses that did not have a consumer-seller relationship. Rather, in each case, the plaintiff had desired to provide a product to the defendant but never consummated the consumer-seller relationship. *See Web Communications,* 889 F.Supp. at 318; *Industrial Specialty,* 902 F.Supp. at 807–08.

■ In the present case, in contrast, Lefebvre's allegations make clear that Lefebvre is a consumer of Sanden's product, the printing press. That is, Lefebvre "purchase[d] or contract[ed] for the purchase of merchandise not for resale in the ordinary course of [its] trade or business but for [its own] use." 815 ILCS 505/1(e). Thus, *Web Communications* and *Industrial Specialty* have no bearing on the present case except to highlight the differences between those cases and the present one.

Consequently, the court finds that Lefebvre was not required to allege that Sanden's trade practices affected the market generally or otherwise implicated consumer protection concerns. Even so, because Le-

febvre alleges facts indicating that it was a consumer of Sanden's and that Sanden engaged in deceptive practices in the sale of its printing press to Lefebvre, the court finds that Lefebvre has adequately alleged that Sanden's trade practices implicated consumer protection concerns.

■ The court notes that Sanden is correct that the Consumer Fraud Act does not apply to every breach of contract between two parties, even with the 1990 amendment allowing plaintiffs to recover damages without showing an effect on consumers generally. *See Lake County Grading,* 275 Ill.App.3d at 459, 211 Ill.Dec. at 305–06, 654 N.E.2d at 1115–16. Thus, "where a plaintiff attempts to allege a violation of the [Consumer Fraud Act] in a case which appears on its face to involve only a breach of contract, the relevant inquiry is 'whether the alleged conduct ... implicates consumer protection concerns.' " *Lake County Grading,* 275 Ill. App.3d at 459, 211 Ill.Dec. at 306, 654 N.E.2d at 1116 (quoting *Downers Grove,* 190 Ill. App.3d at 534, 137 Ill.Dec. at 417, 546 N.E.2d at 41). However, as the court has noted, Lefebvre has alleged that it was a consumer of Sanden's, and that Sanden engaged in deceptive practices to entice Lefebvre to buy Sanden's product. Therefore, Lefebvre has alleged conduct on the part of Sanden that implicates consumer protection concerns.

■ The court also notes that its conclusion that Lefebvre has alleged a Consumer Fraud Act claim is not inconsistent with its earlier holding that Lefebvre has failed to state a claim for fraudulent misrepresentation. A plaintiff suing under the Consumer Fraud Act need not allege all of the elements of fraudulent misrepresentation, because the Consumer Fraud Act prohibits any deception or false promise. *First Security Bank of Glendale Heights v. Bachleda,* 165 Ill.App.3d 725, 731, 117 Ill.Dec. 309, 313, 520 N.E.2d 660, 664 (1st Dist.1987). The Consumer Fraud Act makes actionable a false promise or omission of material fact. *See* 815 ILCS 505/2.

The court has found that Sanden's statements that its printing press could produce commercially acceptable four color process

work were essentially promises, and Lefebvre's complaint alleges that the statements were false. Thus, according to Lefebvre's complaint, Sanden made false promises to Lefebvre. In addition, while the court has found that Lefebvre's complaint does not adequately allege that Sanden actively concealed the past problems with another printing press sold to another customer, the complaint alleges that Sanden failed to inform Lefebvre of the material fact of the past problems. Thus, the complaint sufficiently alleges an omission of material fact.

Accordingly, Lefebvre has stated a claim for violation of the Consumer Fraud Act.

### E. *Claim for consequential damages*

Sanden seeks dismissal of Lefebvre's claims for lost profits and other consequential damages. Sanden contends that the purchase contract contains an unambiguous waiver of such damages. Lefebvre counters that the waiver provision is unconscionable, and therefore should not be enforced.

The UCC allows contracting parties to limit their contractual remedies. Section 2–719 provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is *prima facie* unconscionable but limitation of damages where the loss is commercial is not.

810 ILCS 5/2–719(3).

In the present case, the purchase contract between Sanden and Lefebvre excluded consequential damages. The contract provided: "Seller will at no time be liable for any losses sustained by purchaser due to shortages of operating materials or supplies, or for consequent damages such as loss of anticipated profits, loss of production, or increased cost of operation." (Compl. Ex. 2 App. A ¶ 9.)

Sanden contends that because Lefebvre agreed to waive its right to consequential damages, any claims by Lefebvre to consequential damages must be dismissed. Lefebvre counters that it should not be bound by the consequential damages exclusion because the express warranty in the contract failed of its essential purpose and is unconscionable because of Sanden's misrepresentations.

Lefebvre argues that section 2–719(3) must be read in conjunction with section 2–719(2), which provides: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." 810 ILCS 5/2–719(2). Lefebvre correctly points out that a contractual provision limiting the remedy to repair or replacement of defective parts fails of its essential purpose within the meaning of section 2–719(2) if the breaching manufacturer or seller is unable to make the necessary repairs within a reasonable time. *See Interlake Packaging Corp. v. Strapex Corp.*, 842 F.Supp. 304, 307 (N.D.Ill.1993). Moreover, it is irrelevant whether the seller's failure was willful or not. *See id.* at 307 n. 6. (citing *Custom Automated Machinery v. Penda Corp.*, 537 F.Supp. 77, 83 (N.D.Ill. 1982); *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 939 (7th Cir.1978)). Lefebvre contends that its complaint sufficiently alleges that Sanden's repeated attempts to repair the printing press have failed, and therefore that the express warranty has failed of its essential purpose.

If the contract contained only an express warranty limiting Lefebvre's remedies to repair and replacement, and did not contain an explicit limitation of consequential damages, Lefebvre would be correct. However, under Seventh Circuit precedent, failure of the essential purpose of the limited remedy does not necessarily mean that the court also should disregard another provision excluding consequential damages. *See Smith v. Navistar Int'l Transp. Corp.*, 957 F.2d 1439, 1443 (7th Cir.1992).

The court in *Smith* noted that in *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir.1978), it had "refused to automatically sever a consequential damage disclaimer from a contract merely on the failure of a limited warranty to provide the benefits that the parties bargained for," stating:

"[S]ome courts have awarded consequential damages, when a remedy failed of its essential purpose, in the face of prohibitions in the contract against consequential damages.... However, we reject the contention that failure of the essential purpose of the limited remedy automatically means that a damage award will include consequential damages. An analysis to determine whether consequential damages are warranted must carefully examine the individual fact situation[,] including the type of goods involved, the parties and the precise nature and purpose of the contract. The purpose of the courts in contractual disputes is not to re-write contracts by ignoring parties' intent; rather, it is to interpret the existing contract as fairly as possible when all events did not occur as planned."

*Smith,* 957 F.2d at 1443 (quoting *AES,* 583 F.2d at 941 (footnote omitted)) (citations omitted).

The court noted that other courts had adopted the case-by-case approach set forth in *AES.* For example, the Third Circuit found that the consequential damages provision should be treated as an independent provision, valid unless unconscionable. *Smith,* 957 F.2d at 1443 (citing *Chatlos Systems v. Nat'l Cash Register Corp.,* 635 F.2d 1081, 1086 (3d Cir.1980)). The Third Circuit stated:

"The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. The [UCC], moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive."

*Smith,* 957 F.2d at 1443–44 (quoting *Chatlos Systems,* 635 F.2d at 1086).

Similarly, in a Ninth Circuit case, that court found that consequential damages were not warranted even though the limited repair warranty failed to achieve its essential purpose. *Smith,* 957 F.2d at 1444 (citing *S.M. Wilson & Co. v. Smith Int'l, Inc.,* 587 F.2d 1363 (9th Cir.1978)). The Ninth Circuit stated:

"The issue [is] whether the failure of the limited repair remedy to serve its purpose requires permitting the recovery of consequential damages.... We hold it does not. In reaching this conclusion we are influenced heavily by the characteristics of the contract between [seller] and [buyer].... Parties of relatively equal bargaining power negotiated an allocation of their risks of loss. Consequential damages were assigned the buyer.... The machine was a complex piece of equipment designed for the buyer's purposes. The seller ... did not ignore his obligation to repair; he simply was unable to perform it. This is not enough to require that the seller absorb losses the buyer plainly agreed to bear. Risk shifting is socially expensive and should not be undertaken in the absence of a good reason. An even better reason is required when to so shift is contrary to a contract freely negotiated. The default of the seller is not so total and fundamental as to require that its consequential damages limitation be expunged from the contract."

*Smith,* 957 F.2d at 1444 (quoting *S.M. Wilson,* 587 F.2d at 1375).

*Smith* and the cases cited with approval in it explicitly refute Lefebvre's argument that because the limited remedy failed of its essential purpose, Lefebvre is entitled to consequential damages. Rather, these cases instruct that the court must look at the circumstances of the case to determine whether the consequential damages provision was unconscionable.

The court finds that it was not. Unconscionability exists where one of the parties had no meaningful choice and the challenged contract terms are unreasonably favorable to the other party. *Preston v. Kruezer,* 641 F.Supp. 1163, 1171 (N.D.Ill. 1986). Neither aspect is present here with respect to the consequential damages provision.

Both Lefebvre and Sanden are sophisticated commercial businesses. (Compl. ¶¶ 1–2.) Lefebvre told Sanden what type of printing it needed. (*Id.* ¶¶ 5, 7, 9.) Sanden assured Lefebvre that the printing press was capable of producing commercially acceptable work. (*Id.* ¶¶ 8, 9, 10.) After several weeks of discussing the purchase with Sanden and a visit to Sanden's facilities, and based on Sanden's representations, Lefebvre agreed to purchase the printing press and entered into a purchase contract with Sanden. (*Id.* ¶ 11.) Sanden drafted the purchase contract, but Lefebvre reviewed and altered it. (*See id.* Ex, 2 at 2.) The purchase price of the printing press and additional components was over $2 million. (*See id.* ¶¶ 11–12.) After the printing press was delivered to Lefebvre, it never properly functioned. (*Id.* ¶ 15.) Sanden repeatedly tried to fix the printing press, but was unable to do so. (*Id.* ¶ 16.)

Lefebvre does not allege facts indicating that it had no reasonable choice as to whether or not to agree to the consequential damages provision. Lefebvre claims that Sanden did not bargain in good faith because it did not disclose the past problems with another printing press of the type that Lefebvre purchased. Even if this were true, the court fails to see how Sanden's failure to disclose the past problems deprived Lefebvre of its ability to choose whether or not to enter into a purchase contract that contained a consequential damages waiver. Lefebvre cannot seriously argue that it could not have foreseen that the printing press might not work properly. Not only would such a claim by an experienced commercial printing business be wholly implausible, but the contract spells out what steps the parties were to take if the printing press failed to work. (Compl. Ex. 2 App. A ¶ 12.) Thus, the contract itself demonstrates that both parties anticipated the possibility of the printing press not functioning properly.

■ Moreover, the contract terms may have been favorable to Sanden, but they were not unreasonably so. The UCC explicitly permits parties to agree to waive consequential damages. *See* 810 ILCS 5/2–719(3). If such a provision is legally permissible, it should be considered reasonable. Moreover, the cases cited by the parties in their briefs on this motion, as well as other cases discovered by the court, demonstrate that consequential damages waivers are quite common in commercial contracts. For example, see *Smith*, 957 F.2d at 1442–44 and the numerous cases cited therein. In addition, the contract did not deprive Lefebvre of all remedies, but simply limited Lefebvre's remedies. The court sees nothing unreasonable in such a limitation, and has found no cases that hold differently.

In finding that the consequential damages provision should stand, this court is "'heavily influenced by the characteristics of the contract'" between Sanden and Lefebvre. *Smith*, 957 F.2d at 1444 (quoting *S.M. Wilson*, 587 F.2d at 1375). Nothing in Lefebvre's complaint indicates any disparity in bargaining power between Sanden and Lefebvre; thus, "'[p]arties of relatively equal bargaining power negotiated an allocation of their risks of loss.'" *Id.*

As in *S.M. Wilson*, the risk of consequential damages was assigned to the buyer, Lefebvre. *See id.* Also as in *S.M. Wilson*, the printing press was a complex piece of machinery, apparently with a basic design but built for Lefebvre at least in part to Lefebvre's specifications. *See id.* Again, as in *S.M. Wilson*, the seller, Sanden, did not ignore its obligation to repair the printing press but simply was unable to perform it. *See id.* And, as in *S.M. Wilson*, "[t]his is not enough to require that [Sanden] absorb losses [Lefebvre] plainly agreed to bear." *Id.*

Accordingly, the court finds that Lefebvre is not entitled to consequential damages on its breach of contract or breach of express warranty claim.

■ However, whether Lefebvre is entitled to consequential damages on its Consumer Fraud Act claim is a different question. The term "consequential damages" typically refers to contract rather than tort damages. *See Berwind Corp. v. Litton Indus., Inc.*, 532 F.2d 1, 7 (7th Cir.1976). Nonetheless, a consequential damages exclusion may apply to tort as well as contract damages, depending upon the context of the exclusion.

In *Gates Rubber Co. v. USM Corp.*, 508 F.2d 603 (7th Cir.1975), the Seventh Circuit held that a contractual consequential damages exclusion applied in a negligence action arising out of the contract. In *Gates*, the contract between the seller and buyer contained the following provision: "[The seller] shall have no liability for any special indirect or consequential damages arising from loss of production or other losses owing to failure of machinery or equipment." *Id.* at 616. Another provision expressly limited the seller's liability and remedies for breach of warranty. *Id.* at 616–17.

The court found that the consequential damages provision "referred broadly to consequential damages 'owing to failure of machinery or equipment.'" *Id.* at 617. It found that the provision would be superfluous "if it were read as merely referring to warranty recovery" because of the additional warranty and remedy limitation provision. *Id.* Thus, the court found that the "most logical" interpretation of the consequential damages provision was that the seller "was limiting its liability for consequential damages that might be sought in suits based on theories other than breach of warranty." *Id.* The court therefore held that the buyer was properly apprised of the fact that the contract contained a limitation of consequential damages liability that would apply in a subsequent negligence action. *Id.*

The court finds no material difference between *Gates* and the present case. As in *Gates*, the contract between Sanden and Lefebvre contained one provision explicitly excluding consequential damages. The contract also included another provision setting forth Sanden's express warranty and the remedy that Lefebvre had if parts of the printing press were defective. As in *Gates*, the consequential damages provision would be superfluous if it were read merely as referring to remedies under the express warranty. Therefore, the court finds that the consequential damages provision applies to the Consumer Fraud Act count as well as the breach of contract and breach of warranty counts.

Accordingly, the court finds that Lefebvre has no claim for consequential damages in any of the counts remaining in its complaint.

## III. CONCLUSION

For the foregoing reasons, Sanden Machine Limited's motion to dismiss is granted in part and denied in part as follows:

1. The motion is granted in that Counts III and IV are dismissed.

2. The motion is granted in that the claim for consequential damages in Counts I, II, and V is dismissed.

3. The motion is denied in that Count V is not dismissed.